IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 24-11815-MCR |
| | ) | (Chapter 11) |
| 903 LAKE FRONT DRIVE, LLC | ) | |
| | ) | |
| Debtor. | ) | |

## CHAPTER 11 PLAN OF REORGANIZATION OF

## 903 LAKE FRONT DRIVE, LLC

Comes now 903 Lake Front Drive, LLC, Debtor or Plan Proponent, by and through the undersigned

counsel provides the following plan of reorganization  for 903 Lake Front Drive, LLC :

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT ISSUED PURSUANT TO SECTION 1125(b) OF TITLE 11 OF THE UNITED STATES CODE IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.  SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 3018 AND IN THIS PLAN, THE PLAN PROPONENT RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

ARTICLE I

# DEFINITIONS; RULES OF INTERPRETATION; COMPUTATION OF TIME

**1.1 Scope of Definitions.**  For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in Article I of the Plan.  Any term used herein that is not defined herein, but that is used in Title 11 of the United States Code (the "Bankruptcy Code") or the Federal rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.  Whenever the context requires,

1

such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

**1.2    Definitions.**

a.      "Administrative Claim" means all Claims that have been allowed pursuant to an order of the Bankruptcy Court and that are entitled to priority under sections 507(a)(2) or 507(b) of the Bankruptcy Code.

b.      "Administrative Claims Bar Date" means the last date for a person to file any applications or requests for payment of Administrative Claims and shall be specifically defined as the first business day next succeeding the thirtieth calendar day following the Confirmation Date.

c.      "Auction" has the definition set forth in Section 4.1.1 hereof.

d.      "Ballot" means the ballot, the form of which has been approved by the Bankruptcy Court, provided to each Holder of a Claim entitled to vote to accept or reject this Plan.

e.      "Business Day" means any day that is not a Saturday, a Sunday or "legal holiday" in the State of Maryland as such term is defined in Bankruptcy Rule 9006(a).

f.      "Cash on Hand" means any currency or deposits being held by the Debtor, or hereafter collected by the Debtor. The amount of the Cash on Hand is not possible to be known and may fluctuate due to the payment of claims and post-petition recoveries, though it is reasonably believed the Cash on Hand is $0.00.

g.      "Causes of Action" means, any and all claims, choses in action, causes of action suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payments and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively, in law, equity or otherwise, which are owned or held by, or have accrued to, the Debtor, whether arising before or after the Petition Date, including, without limitation, those which are: (i) against any party that has filed a Claim herein; (ii) property of any Estate under and pursuant to Section 541 of the Bankruptcy Code; (iii) for subrogation and contribution; (iv) for turnover; (v) for avoidable transfers and preferences under and pursuant to Sections 542 through 550 and 553 of the Bankruptcy Code and applicable state law; (vi) to determine the extent, validity and priority of liens and encumbrances; (vii) for surcharge under Section 506(c) of the Bankruptcy Code; (viii) for subordination under Section 510 of the Bankruptcy Code; (ix) related to federal or state securities laws; (x) direct or derivative claims or causes of action of any type or kind; (xi) for professional malpractice against professionals employed by any Debtor; (xii) against any and all current and/or former officers and directors of any Debtor; (xiii) under and pursuant to any policies of insurance maintained by any Debtor; (xiv) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xv) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code; (xvi) which arise under or as a result of any section of the Bankruptcy Code, including Section 362; (xvii) or may be available to any Debtor against any

2

third party(ies) under any legal or equitable theory, whether or not specifically identified or described herein or in the Official Form 425A; and (xviii) to the extent not otherwise set forth above, as described in the Official Form 425A.

h.      "Claim" has the meaning ascribed in Section 101(5) of the Bankruptcy Code.

i.      "Class" means a category of Holders of Claims or Equity Interests as set forth in Article III of the Plan.

j.      "Confirmation" shall mean the entry of an order of the Bankruptcy Court confirming the Plan in accordance with Section 1129 of the Bankruptcy Code

k.      "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

l.      "Confirmation Date Assets" means all Property of the Debtor as of the Confirmation Date (excluding assets previously distributed, abandoned, expended or otherwise disposed of by the Debtor prior to the Confirmation Date and not otherwise subject to recovery), including, without limitation, all Causes of Action and other Property existing as of the Petition Date and acquired by any or all of the Debtor during the pendency of this case under the Bankruptcy Code or otherwise.

m.      "Confirmation Hearing" means the hearing before the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider confirmation of this Plan.

n.      "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code, as such order may be amended, modified or supplemented.

o.      "Creditor" has the meaning ascribed in Section 101(10) of the Bankruptcy Code and shall refer to any Holder of a Claim against any Debtor or Holder of any Claim against Property of Debtor as defined in Section 102(2) of the Bankruptcy Code.

p.      "Disclosure Statement" means the Disclosure Statement with respect to this Plan, as may be amended.

q.      "Distribution" means each distribution of Cash to Holders of Allowed Claims pursuant to and under the terms of this Plan by the Debtor on each Distribution Date.

r.      "Distribution Date" means the date(s) which Distributions shall be made pursuant to and under the terms of this Plan by the Debtor.

s.      "Effective Date" shall mean the date fourteen days after the Confirmation Date.

t.      "Equity Interest" means any ownership interest or share in the Debtor (including, without limitation all rights to obtain such an interest or share in any Debtor).

u.      "Estate" means the estate created in this case for the Debtor pursuant to Section 541

3

of the Bankruptcy Code.

v.      "File, Filed or Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

w.      "Final Order" means an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and: (i) as to which the time to appeal or seek reconsideration or rehearing thereof has expired; (ii) in the event of a motion for reconsideration or rehearing is filed, such motion shall have been denied by an order or judgment of the Bankruptcy Court; or (iii) in the event of an appeal is filed and pending, a stay pending appeal has not been entered; provided, however that with respect to an order or judgment of the Bankruptcy Court allowing or disallowing a Claim, such order or judgment shall have become final and nonappealable; and provided further, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

x.      "General Unsecured Claim" means a Claim as of the Petition Date that is not an Administrative Claim, a Secured Claim, a Priority Claim, or a Priority Tax Claim.

y.      "Holder" means a Person holding a Claim or any authorized agent who has completed, executed, and delivered a Ballot in accordance with the applicable voting instructions.

z.      "Impaired" has the meaning ascribed in Section 1124 of the Bankruptcy Code. aa.

"Insider" has the meaning ascribed in Section 101(31) of the Bankruptcy Code.

bb.      "Lien" means any mortgage, lien, pledge, security interest, or other charge or encumbrance or security device of any kind affecting any asset or any property of the Debtor contemplated by Section 101(37) of the Bankruptcy Code.

cc.      "Person" has the meaning ascribed in Section 101(41) of the Bankruptcy Code.

dd.      "Petition Date" means October 17, 2023, the date on which the Debtor commenced this case by filing a petition for relief pursuant to Section 301 of the Bankruptcy Code.

ee.      "Plan" means this Chapter 11 plan, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

ff.      "Priority Claim" means a Claim to the extent that it is of the kind described in, and entitled to priority under Sections 507(a)(3), (a)(4), (a)(5), (a)(6), (a)(7) or (a)(9) of the Bankruptcy Code, that is not a Priority Tax Claim.

gg.      "Priority Scheme" shall mean the priorities for the payment of claims as set forth in 11 U.S.C. § 507.

hh.      "Priority Tax Claim" means a Claim of a governmental unit of the kind specified

4

in Section 507(a)(8) of the Bankruptcy Code.

       ii.      "Professional" means any professional employed or to be compensated pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

       jj.      "Property" means all assets and property included within "property of the estate" as set forth in and within the meaning of Section 541 of the Bankruptcy Code.

       kk.      "Real Estate" means the real property commonly known as 903 Lake Front Drive, Bowie, Maryland 20721, together with all improvements thereupon.

       ll.      "Reserve Fund" has the definition set forth in Section 4.3 hereof.

       mm.      "Schedules" means the Debtor's schedules of assets and liabilities and statement of financial affairs filed with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

       nn.      "Secured Claim" means a Claim that is secured by a Lien on, or security interest in, property of any Debtor, or that has the benefit of rights of setoff under Section 553 of the Bankruptcy Code, but only to the extent of the value of the creditor's interest in the Debtor's interest in such property, which value shall be determined as provided in Section 506 of the Bankruptcy Code.

       oo.      "Successful Bid" shall mean the offer to acquire the Real Estate as the highest bid at the Auction.

       pp.      "Successful Bidder" shall mean the party submitting the Successful Bid for the Real Estate at the Auction.

       qq.      "U.S. Trustee" shall mean the Office of the United States Trustee.

       **1.3**      **Interpretation.**  For purposes of the Plan, (a) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference herein to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (c) unless otherwise specified, all references herein to Articles, Sections, Schedules and Exhibits are references to Articles, Sections, Schedules and Exhibits of or to the Plan; (d) the words "herein" and "hereto" refer to the Plan in their entirety rather than to a particular portion of the Plan; (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (f) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

    **1.4    Computation of Time.** In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006 shall apply.

**ARTICLE II PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE**

# EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND STATUTORY FEES

**2.1 Administrative Expense Claims**. On the Effective Date or at such time as otherwise agreed, the holder of an allowed Administrative Claim against the Debtor shall receive, in full and final satisfaction of such Holder's allowed Claim, cash in an amount equal to the unpaid portion of such allowed Claim. Upon information and belief, the only administrative expense claimant herein is counsel for the Debtor, who is believed to be holding a retainer that should cover most – if not all – of counsel's fees. To the extent said retainer is insufficient to cover such fees, any Administrative Claim will be paid from the Reserve Fund.

To facilitate the orderly payment of Administrative Claims, the Confirmation Order will establish an Administrative Claims Bar Date as described in the Plan. <u>All Administrative Claims must be asserted no later than the Administrative Claims Bar Date in order to be allowed and eligible for payment. Parties who fail to assert Administrative Claims in accordance with the Administrative Bar Date will be forever barred from receiving distributions under the Plan as Administrative Claim holders</u>. Administrative Claims remain subject to approval of the Bankruptcy Court as a condition precedent to payment.

**2.2 U.S. Trustee's Fees.** The U.S. Trustee shall receive payment, on or before the Effective Date, of all fees owed under 28 U.S.C. § 1930(a)(6) on account of disbursements made by the Debtor from the Petition Date through the Effective Date. Any U.S. Trustee's fees owed subsequent to the Effective Date will be paid on the date on which the case is closed or converted to a case under Chapter 7. The Cash on Hand shall be used to pay these fees. Should Cash on Hand be insufficient to pay these fees, any U.S Trustee fees shall be paid from the Reserve Fund.

**2.3 Priority Tax Claims**. Unless a Final Order otherwise provides, on the Effective Date, each Holder of a Priority Tax Claim that is an allowed Claim against the Debtor shall receive, in full and final satisfaction of such Holder's allowed Claim cash in an amount equal to the unpaid portion of such allowed Claim. Notwithstanding the foregoing, the Holder of an allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the allowed Priority Tax Claim.

**2.4 Full Satisfaction, Discharge and Release**. The payments, distributions and other treatment afforded to Holders of allowed Administrative Claims and allowed Priority Tax Claims against the Debtor under this Article II shall be in full and complete satisfaction, discharge and release of such allowed Claims.

**ARTICLE III CLASSIFICATION, IMPAIRMENT AND TREATMENT OF**

# CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR

**3.1 Generally.** All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are placed in Classes as set forth below. A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled or paid prior to the Effective Date, and is classified in other Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes.

**3.2     Identification and Treatment of Classes.**

The following are the designations for, and treatment of, the Classes of Claims against and Equity Interests in the Debtor:

**(a)     Class 1 - Allowed Secured Claim of WCP.** Class 1 consists of the allowed Secured Claim of WCP in an amount owed, as of the Petition Date, of $660,122.04 plus accruing post-petition interest, fees and costs at the contract rate. WCP will be paid all proceeds of the sale of the Real Estate, after payment of (i) any Section 2.3 tax claims that hold a lien on the Real Estate senior to that of WCP; and (ii) the Class 2 Claim of Prince George's County, Maryland. Class 1 shall also receive any Cash on Hand that remains after the retirement of those claims delineated in Article II hereof, up to the sum required to pay the Class 1 Claim in full.

Class 1 is an impaired class.

**(b)     Class 2 – Allowed Secured Claim of Prince George's County, Maryland.** Class 2 consists of the allowed Secured Claim of Prince George's County, Maryland in an amount owed, as of the Petition Date, of $8,205.83.

Class 2 is an impaired class.

**(c)     Class 3 – Allowed Unsecured Claims.** Class 3 shall consist of all Claims that are not Secured Claims. Class 3 does not presently have any constituent Claims as no creditors, aside from Prince George's County, Maryland, have filed a proof of claim herein, and no creditors, aside from WCP, were scheduled by the Debtor. The bar date for the filing of non-governmental Claims has passed.

Class 3 is an unimpaired class so long as it has no members; should Class 3 gain any membership, Class 3 will be an impaired class.

**(d)     Class 4 – Equity Interest.**

Class 4 There will be no Equity Interest Claims.

Class 4 is an Insider and is an Impaired class.

**ARTICLE IV**

7

# MEANS OF IMPLEMENTING THE PLAN

**4.1  Purchase of Real Estate**.

       **4.1.1  Purchase .**      Following the approval of the plan the Debtor shall make regular mortgage payments and payments toward arrears to satisfy any outstanding obligations to secured and priority creditors over a period of 60 months.  Debtor reverse the option to payoff the debt in full by refinancing of the debt.

       **4.1.2 Sale of the Property to the Successful Bidder.** At closing following the Auction, which is to be held as soon as practicable following the Auction and in no event more than three Business Days after the conclusion of the Auction, and concurrent with the Successful Bidder presenting cash or certified funds to counsel for WCP (to be held in an attorney's trust account), the Real Estate shall be transferred to the Successful Bidder pursuant to the Successful Bid free and clear of all (i) liens, mortgages, security interests, conditional sale or other title retention agreements, pledges, claims, judgments, demands, charges, encumbrances, defects, options, rights of first refusal, and restrictions of all kinds and (ii) all debts arising under or out of, in connection with, or in any way relating to, any acts of the Debtor, claims, rights, including rights of setoff or recoupment, defenses, causes of action (whether at law or in equity), obligations, demands, guaranties, interests and matters of any kind or nature whatsoever that arise prior to closing. All Classes of Claims will be paid (to the extent there are funds for payment) at closing in accordance with the treatment provided for in the Plan. If WCP is the Successful Bidder, and the Successful Bid is less than the Claim of WCP, there shall be no requirement that cash or certified funds be presented at closing.

   **4.1.3 Deed.**  The property shall be deeded in the name of 903 Lake Front LLC and Marteese Green.
.

<strong>ARTICLE V</strong>

# PROVISIONS GOVERNING DISTRIBUTIONS

   **5.1 Delivery of Distributions**.  Distributions and deliveries to Holders of Allowed Claims shall be made at the addresses set forth on the proofs of claim filed by such Holders (or at the last known addresses of such Holders if no proof of claim is filed).

   **5.2 No Interest Unless Otherwise Provided**.  No interest shall be paid on any Claim unless, and only to the extent permitted, under the terms of the Plan.

   **5.3 Undistributed Property**.  If any Distribution remains unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the Holder entitled thereto, such Unclaimed Property shall be forfeited by such Holder.  Unclaimed Property shall be given to the Debtor.

<strong>ARTICLE VI</strong>

# CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN

**6.1 Conditions to Effectiveness of Plan.**  The Effective Date of the Plan shall not occur unless and until the following conditions shall have been satisfied or waived by the Plan Proponent: (a) the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Plan Proponent, and such Confirmation Order shall be a Final Order; and (b) the Bankruptcy Court shall have approved the information contained in the Disclosure Statement as adequate pursuant to Section 1125 of the Bankruptcy Code.

**6.2 Notice of Confirmation of the Plan.**  Notice of entry of the Confirmation Order shall be provided as required by Bankruptcy Rule 3020(c)(2).

**ARTICLE VII**

# RETENTION OF JURISDICTION

**7.1 Retention of Jurisdiction.**  Pursuant to Sections 1334 and 157 of Title 28 of the United States Code, the Bankruptcy Court shall retain jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, for the purposes of Sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)     to hear and determine any and all adversary proceedings, applications, or contested matters, including avoidance actions, and any remands from any appeals;

(b)     to hear and to determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan;

(c)     to consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(d)     to enter, enforce and implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement, consummate or enforce the terms and conditions of the Plan and the transactions contemplated hereunder;

(e)     to enter and to implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement or enforce the terms and conditions of the Plan;

(f)     to hear and to determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and

(g)     to enter a final decree closing this Chapter 11 case.

9

**7.2 Abstention and Other Courts.**  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, this section of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**ARTICLE VIII**

# RELEASE FOR PLAN PROPONENT AND PROFESSIONALS

**8.1 Limitation of Liability in Connection with the Case, the Plan, and Related Documents.**  Pursuant to § 1125(e) of the Bankruptcy Code, the Plan Proponent will neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the Case, including, but not limited to, the formulation, preparation, dissemination, negotiation, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement, pleading or document created or entered into, the pursuit, non-pursuit or settlement of Causes of Action or any other act taken or omitted to be taken in connection with or for the purpose of carrying out the Plan, the Disclosure Statement, the Confirmation Order or related agreement, including solicitation of acceptances of the Plan ("Exculpated Conduct"); provided, however, that no Person shall be relieved of liability for fraud, gross negligence, and intentional misconduct.

All Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against the Plan Proponent, whether directly, derivatively, on account of or respecting any Claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct.

**ARTICLE IX**

# MISCELLANEOUS PROVISIONS

**9.1 Severability.**  Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the Plan Proponents may modify the Plan in accordance with the Plan, as applicable, so that such provision shall not be applicable to the Holder of any Claim or Equity Interest.

**9.2 Binding Effect.**  Upon the entry of the Confirmation Order, all provisions of the Plan shall be binding upon, and shall inure to the benefit of, the Debtor, the Holders of Claims and Equity Interests, and such Persons' respective successors and assigns.

**9.3. Transfer Tax Exemption.**  Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or securities under the Plan, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, deeds of trust, mortgages, bills of sale or assignments

10

executed in connection with any of the transactions contemplated under the Plan, including the sale of the Real Estate provided for under this Plan, shall not be subject to any stamp tax or other similar tax, including, but not limited to, transfer and recordation tax on the sale of the Real Estate.

**9.4 Governing Law.**  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the laws of the State of Maryland shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**9.5    Intentionally Omitted.**

**9.6 Timing of Distributions.**  Any Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

**9.7 Revocation or Withdrawal of Plan.**  The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order. If the Plan is withdrawn or revoked, then the result shall be the same as if the Confirmation Order had not been entered and the Effective Date had not occurred.  If the Plan is revoked or withdrawn prior to the entry of the Confirmation Order, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the such entity or any Person in any further proceedings involving such entity.

**9.8 Nonmaterial Modifications.**  The Plan Proponent may, with the approval of the Bankruptcy Court and without notice to Holders of Claims and Equity Interests, correct any nonmaterial defect, omission, or inconsistency herein in such manner and to such extent as may be necessary or desirable.

**9.9 Material Modifications.**  Modifications of the Plan may be proposed in writing by the Plan Proponents at any time prior to Confirmation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponents shall have complied with Section 1125 of the Bankruptcy Code. The Plan may be modified at any time after Confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under Section 1129 of the Bankruptcy Code, and the circumstances warrant such modification.

**9.10 Cramdown.**  This section shall constitute the Plan Proponent's request, if necessary, pursuant to Section 1129(b)(1) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of Section 1129(a)(8) of the Bankruptcy Code may not be met.

**9.11 No Recourse.**  No Person entitled to receive a payment or Distribution under the Plan will have any recourse against the Estate, the Trustee and his professionals, the Debtor, or the Plan Proponent and its professionals, other than the right to receive Distributions in accordance with the terms of the Plan.

**9.12 Notices.**  Any notice required or permitted to be provided hereunder shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) prepaid overnight delivery service and addressed as follows:

> Charles E. Walton, Esq.
> Walton Law Group, LLC
> 10905 Fort Washington Road Sutie 201
> Fort Washington, MD 20744
> *Counsel for the Plan Proponent*

**9.13 Saturday, Sunday, or Legal Holiday.**  If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**9.14 Successors and Assigns.**  The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

**9.15 Entry of a Final Decree**.  The Debtor may file a motion with the Bankruptcy Court to obtain the entry of a final decree upon completion of Plan payments.

Respectfully submitted,

Dated:  September 2, 2024

By: <u>/s/ Charles E. Walton</u>
    Charles E. Walton, Esq.
    Walton Law Group, LLC
    10905 Fort Washington Road Sutie 201
    Fort Washington, MD 20744
    (301) 292-8357
:    (301)  292-8435
    cwalton@cwaltonlaw.com
    *Counsel for 903 Lake Front Dr*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 24-11815-MCR |
| | ) | (Chapter 11) |
| 903 LAKE FRONT DRIVE, LLC | ) | |
| | ) | |
| Debtor. | ) | |

**DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF REORGANIZATION OF
903 LAKE FRONT DRIVE, LLC**


 Comes now 903 LAKE FRONT DRIVE, LLC (also referred to as 903 and the Plan Proponent),

by and through the undersigned counsel, provides the following disclosure statement which

 correlative to its plan of reorganization for 903 Lake Front Drive, LLC:

THIS DISCLOSURE STATEMENT IS DESIGNED TO PROVIDE ADEQUATE
INFORMATION TO ENABLE HOLDERS OF CLAIMS AGAINST THE DEBTOR TO MAKE
AN INFORMED JUDGMENT ON WHETHER TO ACCEPT OR REJECT THE PLAN. ALL
HOLDERS OF CLAIMS ARE HEREBY ADVISED AND ENCOURAGED TO READ THIS
DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO
ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS
DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY
REFERENCE TO THE PLAN, WHICH IS ANNEXED HERETO AS EXHIBIT "A" AND
OTHER DOCUMENTS REFERENCED AS FILED WITH THE COURT BEFORE OR
CONCURRENTLY WITH THE FILING OF THIS DISCLOSURE STATEMENT.
FURTHERMORE, THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT
BEEN THE SUBJECT OF AN AUDIT. SUBSEQUENT TO THE DATE HEREOF, THERE CAN
BE NO ASSURANCE THAT: (A) THE INFORMATION AND REPRESENTATIONS
CONTAINED HEREIN WILL CONTINUE TO BE MATERIALLY ACCURATE; AND (B) THIS
DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION.

ALL HOLDERS OF CLAIMS SHOULD READ AND CONSIDER CAREFULLY THE
MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT AS A WHOLE PRIOR TO
VOTING ON THE PLAN. IN MAKING A DECISION TO ACCEPT OR REJECT THE PLAN,
EACH CREDITOR MUST RELY ON ITS OWN EXAMINATION OF THE DEBTOR AS
DESCRIBED IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN,
INCLUDING THE MERITS AND RISKS INVOLVED.

NO PARTY IS AUTHORIZED BY THE SECURED CREDITOR TO GIVE ANY
INFORMATION OR MAKE ANY REPRESENTATIONS WITH RESPECT TO THE PLAN

OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. NO REPRESENTATIONS OR INFORMATION CONCERNING THE DEBTOR, ITS FUTURE BUSINESS OPERATIONS OR THE VALUE OF ITS PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTOR. ANY INFORMATION OR REPRESENTATIONS GIVEN TO OBTAIN YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH ARE
DIFFERENT FROM OR INCONSISTENT WITH THE INFORMATION OR REPRESENTATIONS CONTAINED HEREIN AND IN THE PLAN SHOULD NOT BE RELIED UPON BY ANY CREDITOR IN VOTING ON THE PLAN.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NONBANKRUPTCY LAW. PERSONS OR ENTITIES HOLDING OR TRADING IN, OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, OR SECURITIES OF, THE DEBTOR, IF ANY, SHOULD EVALUATE THIS DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS SUCH COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. WITH RESPECT TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER PENDING OR THREATENED ACTIONS, THE DISCLOSURE STATEMENT AND PLAN AND THE INFORMATION CONTAINED THEREIN SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS STATEMENTS MADE IN SETTLEMENT NEGOTIATIONS GOVERNED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER RULE OR STATUTE OF SIMILAR IMPORT. THIS DISCLOSURE STATEMENT AND PLAN SHALL NEITHER BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE SECURED CREDITORS OR ANY OTHER PARTY NOR BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN. EACH CREDITOR SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.

This Disclosure Statement and the Plan  are being furnished by the Plan Proponent to holders of Claims  to permit creditors the opportunity to either accept or reject the Plan (and the transactions contemplated thereby, as disclosed herein), as necessary. Capitalized terms in this Disclosure Statement, to the extent not otherwise defined herein, shall have the same definition that is assigned to capitalized terms in the Plan.

## I.    Introduction

The Debtor filed a petition for relief under Section 301 of Title 11 of the United States Code on March 4, 2024 (the "Petition Date"). The Debtor's sole asset is the real property

commonly known as 903 Lake Front Drive, Bowie, Maryland 20721, together with the improvements thereupon (the "Real Estate").

While the Debtor has remained in possession throughout the duration of this case. The Debtor has recently, however, filed operating reports.

The mortgage holder in this case has failed or refused to cooperate or discuss the current obligation with the Debtor or the Attorney.

The Plan is one that calls for paying the arrears on the Creditor's Debtor maintaining timely monthly payments and transferring ownership of the home to the Guarantor's sole name. The Plan also calls for the payment of priority tax creditors of the Estate, and payment of all allowed administrative expense claims of the Estate.

Debtor proposes that Guarantor be added to the deed and further proposes that this case be convert to a Chapter 13 case under the Bankruptcy Code.

## II. The Chapter 11 Confirmation Process

The Chapter 11 confirmation process is governed, in large part, by Title 11 of the United States Code (the "Bankruptcy Code"). Under the Bankruptcy Code, to be confirmed, the Plan must be accepted by at least one (1) class of creditors whose claims against the Debtor will be "impaired" under the Plan. Claimants who are scheduled to receive full payment on their claims without modification or changes to their right to payment are deemed to have accepted the Plan and do not vote. Only creditors whose claims are "impaired" or their right to payment terms is modified or changed are entitled to vote in favor of accepting or rejecting the Plan. A class of claims is "impaired" if the amount to be paid to the class provides the claimants in that class with less than full payment of the allowed claims in that class or the terms for repayment are extended beyond the contractual due date or some other contractual terms are changed. Acceptance by such class requires that at least one-half of the creditors in the class who cast accepting votes on the Plan, and hold at least two-thirds of the total dollar amount of the claims in that class casting votes on the Plan. A class of claims that is likely to receive nothing under the Plan is not entitled to vote thereon and, to the contrary, is presumed to have rejected the Plan.

As indicated in the instructions accompanying the ballot (the "Ballot"), which is the form on which you may cast your vote to accept or reject the Plan, the Ballot must be delivered to the Plan Proponent's counsel in time to ensure that your Ballot will be received by the due date. Ballots received after the due date may not be counted.

Pursuant to Federal Rule of Bankruptcy Procedure 3017, a Ballot shall be mailed only to "creditors and equity security holders entitled to vote on the plan." The Plan consists of two classes of claims entitled to vote on the Plan, and thus those classes will receive ballots. All other classes of claims are presumed to have rejected the Plan.

## III.   Debtor's Background and Financial History

Debtor was lured fraud and representation to form a Maryland limited liability company on October 27, 2021. The Debtor acquired the Real Estate on or about November 3, 2021, with a deed thereto being recorded on or about January 28, 2022 in the name of the LLC.

As evidenced by the creditor's statement, the Debtor has acquired, owned, controlled, operated, or otherwise enjoyed possession of any other real estate asset believing it to be owned by Marteese Green the Guarantor. It is not believed that the debtor has ever conducted any business other than the operation of real estate.  The Debtor along with the Real Estate Agent and the Mortgage Lender were fully aware of the circumstances surrounding the loan made to the recently created LLC Debtor.  Debtor sold her severely disabled mother's home and made a $160,000.00 down payment to purchase the home with the approval of the mortgage company creditor and paid a monthly mortgage payment of about $3900 dollars a month. Debtor faithfully made these payment with the understanding that the house would be transferred to the Guarantor Martessee Green.  When Ms. Green sought to make the transfer both the mortgage creditor and the real estate professional who arranged the loan stop communicating with Ms. Green and Ms. Green stopped paying the mortgage which she has the ability to pay.

When to Mortgage Creditor failed to communicate and sought to foreclose of 903 Lake Front the Debtor sought bankruptcy protection, thereby commencing this case, on March 4, 2024.

## IV.   Description and Valuation of Assets

The Real Estate is believed to be a four-bedroom, three-and-one-half bathroom single-family home, with approximately 4,152 square feet of living space. The Debtor acquired a loan from WCP for $471,920.00.

The debtor made a downpayment of $160,000.

The Debtor has scheduled the Real Estate asset as being worth $654,700.00. The parcel and improvements are tax assessed at $644,500.00. Debtor has made $29,000 in improvement and the Debtor has not scheduled any other assets because the LLC only hold one asset. Debtor holds certain Causes of Action   against WCP and the Real Estate Professional and others.

## V. Summary of the Plan and Treatment of Claims and Interests

The Plan provides for that Debtor pays off WCP arrears and makes plan payment until the loan is paid in full.  Debtor by Guarantor is able to pay off or refinance the loan.

The Plan provides for the following classifications of creditors' claims:

Class 1 – Allowed Secured Claim of WCP. Class 1 consists of all secured claims held by WCP against the Debtor. It is anticipated this class will be paid in part, but not full, under the Plan.

Class 2 – Allowed Secured Claim of Prince George's County, Maryland. Class 2 consists of the allowed Secured Claim of Prince George's County, Maryland in an amount owed, as of the Petition Date, of $8,205.83. Class 2 will be paid, in full, under the Plan.

Class 3 – Allowed Unsecured Claims. It is not believed that there exist any general unsecured Claims in this case. To the extent any such Claims are subsequently recognized, they will be placed in Class 3. It is not reasonably believed Class 3 will take anything under the Plan.

**Full Satisfaction and Release**. The payments, distributions and other treatment afforded to holders of allowed claims and interests under the Plan shall be in full and complete satisfaction, discharge and release of such allowed claims or interests against the Debtor and Guarantor.

## VI. Designation and Treatment of Unclassified Claims

**Administrative Expense Claims**. Two weeks after the date on which the Plan is confirmed (the "Effective Date"), or at such other time as may be agreed, the holder of an allowed administrative claim against the Debtor shall receive, in full and final satisfaction of such holder's allowed claim, cash in an amount equal to the unpaid portion of such allowed claim. Upon information and belief, the only administrative expense claimant herein is counsel for the Debtor, who is believed to be holding a retainer that should cover most – if not all – of counsel's fees. The Reserve Fund shall be used to satisfy any portion of this Administrative Claim not secured by a law firm's retainer.

**U.S. Trustee's Fees.** The Chapter 11 Trustee shall pay to the United States Trustee, on or before the Effective Date, all fees owed under 28 U.S.C. § 1930(a)(6) for disbursements owed by the Debtor from the Petition Date through the Effective Date. Any U.S. Trustee's fees owed subsequent to the Effective Date will be paid on the date on which the case is closed or converted to a case under Chapter 7, to the extent the Estate has cash sufficient to satisfy such obligations. The Reserve Fund shall be used to pay any U.S. Trustee fees.

**Priority Tax Claims**. Unless a Final Order otherwise provides, on the Effective Date, each Holder of a Priority Tax Claim that is an allowed Claim against the Debtor shall receive, in full and final satisfaction of such Holder's allowed Claim cash in an amount equal to the unpaid portion of such allowed Claim. Notwithstanding the foregoing, the Holder of an allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the allowed Priority Tax Claim.

## VII.   Bar Date for Filing Claims

The bar date for filing a proof of claim in this case was July 8, 2024 for all creditors (except a governmental unit). The bar date for governmental entities to file proofs of claim is September 3, 2024. The failure to file or deliver a proof of claim or a proof of interest by the applicable bar date constitutes a bar against the assertion, allowance or distribution on account of any such claim or interest.

## VIII.   Acceptance and Confirmation of Plan

Except as discussed below, a prerequisite to the confirmation of the Plan is the acceptance of the Plan by each impaired class. A class is impaired unless, with respect to each claim or interest in such class, the Plan: (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default, (a) cures any such default that occurred before or after the Petition Date (other than "ipso facto" defaults as specified in Section 365(b)(2) of the Bankruptcy Code); (b) reinstates the maturity of such claim or interest as such maturity existed before such default; (c) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (d) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

In order to carry a designated class for purposes of confirmation of the Plan, the affirmative vote of holders of claims in each such class that hold at least two-thirds in dollar amount and more than one-half in number of the allowed claims in that class who actually vote on the Plan, other than a holder who has been designated by the Court as in bad faith having accepted or rejected the Plan, or whose acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of Chapter 11 of the Bankruptcy Code is required. If the requisite acceptances from holders of allowed claims in each class of claims are obtained, and the Plan is confirmed, the Plan will be binding on all holders of claims and interests, including those who did not vote or who voted to reject the Plan (or those who are deemed to reject the Plan).

The Plan Proponent reserves the right to seek to confirm the Plan pursuant to the cramdown provisions of Section 1129(b) of the Bankruptcy Code. As a condition to confirmation, the Bankruptcy Code generally requires that each impaired class of claims or interest accepts a plan of reorganization. In the event that an impaired class does not accept the Plan, the Bankruptcy Court may nonetheless confirm the Plan if (i) the Plan satisfies all other requirements of Section 1129(a) of the Bankruptcy Code, and (ii) the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each impaired class that has not accepted the Plan.

A plan of reorganization does not discriminate unfairly if (a) the legal rights of a nonaccepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are identical with those of the non-accepting class, and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims or interests. The Plan Proponent believes that the Plan satisfies these requirements with respect to each class.

The Bankruptcy Code establishes different tests for secured creditors, unsecured creditors and interest holders to determine if the Plan is "fair and equitable." The tests may be summarized as follows:

(a)       Secured Creditors: either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value as of the Effective Date equal to the amount of its allowed secured claim, (ii) each

impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim, or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds, and the liens against such proceeds are treated in accordance with clause (i) or (ii), above.

(b)      Unsecured Creditors: either (i) each impaired unsecured creditor receives or retains under the Plan property of a value equal to the amount of its allowed unsecured claim, or (ii) the holders of claims and equity interests that are junior to the claims of the non-accepting Class do not receive any property under the Plan on account of such claims and interests.

(c)      Equity Interest Holders: either (i) each interest holder will receive or retain under the Plan property of a value equal to the greater of (a) the fixed liquidation preference or redemption price, if any of its interest or (b) the value of its interest, or (ii) the holders of interests that are junior to the non-accepting class will not receive any property under the Plan.

The Plan Proponent believes that the Plan is "fair and equitable" to interest holders, unsecured creditors, and secured creditors.

The Plan Proponent reserves all rights to modify or withdraw the Plan at any time prior to the Effective Date.

## IX. Alternatives to Confirmation and Consummation of the Plan

The alternatives to the confirmation and consummation of the Plan include (1) the preparation and presentation of an alternative plan of reorganization and (2) the transfer of property to Martesse Green Guarantor. The Plan Proponent believes transferring the property to Marteese Green provides greater return to its creditors.

**Alternative Plans of Reorganization.** The Plan Proponent believe that an alternative plan would be more viable or in the best interest of creditors or parties in interest. Transfer to Ms. Green ensures payment to Creditors and favors greater distribution to all classes. However, conversion to Chapter 13 best benefits all parties and creditors.

**Liquidation Under Chapter 7 of the Bankruptcy Code.** Debtor does not consider liqidtion an viable option other then to continue the injustice suffered by Martessee Green and contrary **t**o notion of fair pair and equal justice suffer by  Martessee Green.

## X.      Implementation of the Plan

**Feasibility.** The Plan is for reorganization.

**Auction of Real Estate.** The Plan provides for the Real Estate to be paid off in a feasible plan with no risk to the creditor who has adequate protection. Therefore, creditor under Chapter 11 or 13 would make regular mortgage payments to satisfy arrears and either refinance or other pay off the mortgage.

## XI.    Distribution

**Delivery of Distributions**.  Distributions and deliveries to holders of allowed claims shall be made at the addresses set forth on the proofs of claim filed by such holders (or at the last known addresses of such holders if no proof of claim is filed).

**No Interest Unless Otherwise Provided**.  No interest shall be paid on any claim unless, and only to the extent permitted, under the terms of the Plan.

## XII.    Retention of Jurisdiction

Pursuant to Sections 1334 and 157 of Title 28 of the United States Code, the Bankruptcy Court shall retain jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, for the purposes of Sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)    to hear and determine any and all adversary proceedings, applications, or contested matters, including avoidance actions, and any remands from any appeals;

(b)    to hear and to determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan;

(c)    to consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(d)    to enter, enforce and implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement, consummate or enforce the terms and conditions of the Plan and the transactions contemplated hereunder;

(e)    to enter and to implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement or enforce the terms and conditions of the Plan;

(f)    to hear and to determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and

(g)    to enter a final decree closing this Chapter 11 case.

## XIII.    Certain Tax Consequences

The following discussion summarizes certain federal income tax consequences to the Debtor and Debtors' holders of claims and equity interests. This summary is based upon the Internal Revenue Code of 1986, as amended (the "Tax Code"), Treasury Regulations promulgated thereunder, judicial decisions and published administrative rulings and pronouncements of the IRS, as in effect on the date hereof. Legislative, judicial or administrative changes or interpretations

enacted or promulgated hereafter could alter or modify the analysis and conclusions set forth below. Any such changes or interpretations may be retroactive and could affect significantly the federal income tax consequences discussed below. This summary does not address foreign, state or local tax law, or any estate or gift tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special categories of taxpayers who are holders of claims (such as taxpayers who are not domestic corporations or citizens or residents of the United States, or are S corporations, banks, mutual funds, insurance companies, financial institutions, regulated investment companies, broker-dealers and tax-exempt organizations) and assumes that each creditor holds its claim directly.

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties. The Plan Proponent has not requested and will not request a ruling from the IRS with respect to any of the tax aspects of the Plan.

**THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS AND EQUITY INTERESTS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER. MOREOVER, THE TAX CONSEQUENCES OF CERTAIN ASPECTS OF THE PLAN ARE UNCERTAIN DUE TO THE LACK OF APPLICABLE LEGAL PRECEDENT AND THE POSSIBILITY OF CHANGES IN THE APPLICABLE TAX LAW. THERE CAN BE NO ASSURANCE THAT THE IRS WILL NOT CHALLENGE ANY OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE SUSTAINED. ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FOREIGN, FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF THE PLAN.**

**Certain Federal Income Tax Consequences to Debtor.** Upon information and belief, the Debtor is a pass-through entity for federal income tax purposes. Thus, the Debtor is not subject to taxes imposed under chapter 1 of the Tax Code. Accordingly, any net operating income or losses generated by the Debtor during a taxable year ("NOLs") will pass through to the equity interest.

Upon a sale of the Debtor' property any recognized gain or loss equal to the difference between the pre-distribution sale proceeds and Debtors' adjusted tax basis in the property that may be subject to capital gains tax will pass through to equity interest. The amount of gain recognized will include the full proceeds from any sale of property, including the amount of any indebtedness assumed by the buyer to which the property is subject. If the sale of the property results in a gain and such property was used in Debtors' trade or business, such gain would generally be treated as a "section 1231 gain." Such gain would be combined with other Tax Code § 1231 gains and losses. Generally, Tax Code § 1231 gains and losses are offset against each other on an annual basis, and net gain is treated as long-term capital gain, while net loss is treated as ordinary loss. Net § 1231 gains must, however, be treated as ordinary income to the extent of net § 1231 losses taken over the five most recent years, to the extent such losses have not been previously "recaptured."

**Certain Federal Income Tax Consequences to Creditors.** The federal income tax consequences of the Plan to a creditor will depend upon several factors, including but not limited to: (i) whether the creditor's claim (or portion thereof) constitutes a claim for principal or interest; (ii) whether the creditor is a resident of the United States for tax purposes (or falls into any of the special classes of taxpayers excluded from this discussion as noted above); and (iii) whether the creditor has taken a bad debt deduction with respect to its claim. In addition, if a claim is a "security" for tax purposes, different rules may apply.

**CREDITORS ARE STRONGLY ADVISED TO CONSULT WITH THEIR TAX ADVISORS WITH RESPECT TO THE TAX TREATMENT UNDER THE PLAN OF THEIR PARTICULAR CLAIMS.**

A creditor receiving solely cash in exchange for its claim will generally recognize taxable gain or loss in an amount equal to the difference between the amount realized and its adjusted tax basis in the allowed claim. The amount realized will equal the amount of cash to the extent that such consideration is not allocable to any portion of the allowed claim representing accrued and unpaid interest, as further discussed below.

The character of any recognized gain or loss (i.e., ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the creditor, the nature of the allowed claim in the creditor's hands, the purpose and circumstances of its acquisition, the creditor's holding period of the allowed claim, and the extent to which the creditor previously claimed a deduction for the worthlessness of all or a portion of the allowed claim. A loss generally is treated as sustained in the taxable year for which there has been a closed and completed transaction, and no portion of a loss with respect to which there is a reasonable prospect of reimbursement may be deducted until it can be ascertained with reasonable certainty whether or not such reimbursement will be recovered.

A portion of the consideration received by a creditor in satisfaction of an allowed claim may be allocated to the portion of such claim (if any) that represents accrued but unpaid interest. If any portion of the distribution were required to be allocated to accrued interest, such portion would be taxable to the creditor as interest income, except to the extent the creditor has previously reported such interest as income.

In the event that a creditor has not previously reported the interest income, only the balance of the distribution after the allocation of proceeds to accrued interest would be considered received by the creditor in respect of the principal amount of the allowed claim. Such an allocation would reduce the amount of the gain, or increase the amount of loss, realized by the creditor with respect to the allowed claim. If such loss were a capital loss, it would not offset any amount of the distribution that was treated as ordinary interest income (except, in the case of individuals, to the limited extent that capital losses may be deducted against ordinary income).

**Federal Income Tax Consequences to Holders of Equity Interests Receiving Distributions.**
Holders of allowed equity interests receiving distributions will generally recognize loss or gain in

the amount of each such holder's adjusted tax basis in the equity interest. The character of any recognized loss or gain (i.e., ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the holder, the nature of the equity interest in the holder's hands, the purpose and circumstances of its acquisition, the holder's holding period, and the extent to which the holder had previously claimed a deduction for the worthlessness of all or a portion of the equity interest.

A gain or loss generally is treated as sustained in the taxable year for which there has been a closed and completed transaction, and no portion of loss with respect to which there is a reasonable prospect of reimbursement may be deducted until it can be ascertained with reasonable certainty whether or not such reimbursement will be recovered.

**Importance of Obtaining Professional Tax Assistance. No holder of a claim or equity interest should rely on the tax discussion in this Disclosure Statement in lieu of consulting with one's own tax professional. The foregoing is intended to be a summary only and not a substitute for consultation with a tax professional. The federal, state, local and foreign tax consequences of the Plan are complex and, in some respects, uncertain. Such consequences may also vary based upon the individual circumstances of each holder of a claim or equity interest. Accordingly, each holder of a claim or equity interest is strongly urged to consult with its own tax advisor regarding the federal, estate, local and foreign tax consequences of the Plan.**

## XIV.   Miscellaneous Provisions

**Severability.**  Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any claim or equity interest or transaction, the Plan Proponent may modify the Plan in accordance with the Plan, as applicable, so that such provision shall not be applicable to the holder of any claim or equity interest.

**Binding Effect.**  Upon the entry of the Confirmation Order, all provisions of the Plan shall be binding upon, and shall inure to the benefit of, the Debtor, the holders of claims and equity interests, and such persons' respective successors and assigns.

**Governing Law.**  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the laws of the State of Maryland shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**Timing of Distributions.**  Any distribution required to be made hereunder on a day other than a business day shall be due and payable on the next succeeding business day.

**Revocation or Withdrawal of Plan.**  The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order. If the Plan is withdrawn or revoked, then the result shall be the same as if the Confirmation Order had not been entered and the Effective Date had not occurred.  If the Plan is revoked or withdrawn prior to the entry of the

Confirmation Order, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other person or to prejudice in any manner the rights of the such entity or any person in any further proceedings involving such entity.

      **Nonmaterial Modifications.**   The Plan Proponent may, with the approval of the Bankruptcy Court and without notice to holders of claims and equity interests, correct any nonmaterial defect, omission, or inconsistency herein in such manner and to such extent as may be necessary or desirable.

      **Material Modifications.**   Modifications of the Plan may be proposed in writing by the Plan Proponent at any time prior to confirmation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponent shall have complied with Section 1125 of the Bankruptcy Code. The Plan may be modified at any time after confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under Section 1129 of the Bankruptcy Code, and the circumstances warrant such modification.

      **Notices.**   Any notice required or permitted to be provided hereunder shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) prepaid overnight delivery service and addressed as follows:

> Charles E. Walton, Esq.
> Walton Law Group, LLC
> 10905 Fort Washington Road Sutie 201
> Fort Washington, MD 20744
> *Counsel for the Plan Proponent*

      **Successors and Assigns.**   The rights, benefits and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such person.

## XV.   Confirmation Request

      The Plan Proponent respectfully urges all parties entitled to vote on the Plan to do so in favor of the Plan, and respectfully pray this Honorable Court confirm the Plan.

Respectfully submitted,

Dated: September 2, 2024

By: /s/ Charles E. Walton
   Charles E. Walton, Esq.
   Bar No. MD17474
   Walton Law Group, LLC
   10905 Fort Washington RoadSte 201
   Fort Washington, MD 20744
   Phone: (301) 292-8357
   Facsimile (301) 292=9435
   *Counsel for 903 Lake Front*  --

# United States Bankruptcy Court
## District of Maryland

In re   **903 Lake Front Drive, LLC** _____   Case No.   **24-11815**

_____   Chapter   **11**

Debtor(s)

## CERTIFICATE OF SERVICE

I hereby certify that on __September 2, 2024__, a copy of the Chapter 11 Plan of Reorganization and Disclosure Statement for 903 Lake Front Drive, LLC was served electronically or by regular United States mail to all interested parties, the Trustee and all creditors listed below.

**US Trustee**

**Russel S. Drazin Trustee, Pardo & Drazin, LLC, 4400 Jenifer Street NW, Washington, DC 20015**

**Washington Capital Partners, 8401 Greenboro Drive, Suite 960, Mc Lean, VA 22102**

**Prince George's County, Maryland**
**c/o Meyers, Rodbell & Rosenbaum, P.A.**
**6801 Kenilworth Ave., Ste. 400**
**Riverdale Park, MD 20737**

**/s/ Charles E. Walton**
**Charles E. Walton 17474**
**Walton Law Group, LLC.**
**10905 Fort Washington Road**
**Suite 201**
**Fort Washington, MD 20744**
**301-233-0607Fax:202-595-9121**
**cwalton@cwaltonlaw.com**