IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 24-11815-MCR |
| | ) | (Chapter 11) |
| 903 LAKE FRONT DRIVE, LLC | ) | |
| | ) | |
| Debtor. | ) | |

**FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF
903 LAKE FRONT DRIVE, LLC PROPOSED BY WCP FUND I LLC**

Comes now WCP Fund I LLC as Servicer for Pacific RBLF Funding Trust ("WCP," the "Secured Creditor," or the "Plan Proponent"), by and through undersigned counsel, pursuant to Section 1121(c) of Title 11 of the United States Code, and provides the following plan of reorganization (the "Plan") for 903 Lake Front Drive, LLC (the "Debtor"):

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT ISSUED PURSUANT TO SECTION 1125(b) OF TITLE 11 OF THE UNITED STATES CODE IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 3018 AND IN THIS PLAN, THE PLAN PROPONENT RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE I

### DEFINITIONS; RULES OF INTERPRETATION; COMPUTATION OF TIME

**1.1  Scope of Definitions.**  For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in Article I of the Plan.  Any term used herein that is not defined herein, but that is used in Title 11 of the United States Code (the "Bankruptcy Code") or the Federal rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

1

**1.2 Definitions.**

a. "Administrative Claim" means all Claims that have been allowed pursuant to an order of the Bankruptcy Court and that are entitled to priority under sections 507(a)(2) or 507(b) of the Bankruptcy Code.

b. "Administrative Claims Bar Date" means the last date for a person to file any applications or requests for payment of Administrative Claims and shall be specifically defined as the first business day next succeeding the thirtieth calendar day following the Confirmation Date.

c. "Auction" has the definition set forth in Section 4.1.2 hereof.

d. "Ballot" means the ballot, the form of which has been approved by the Bankruptcy Court, provided to each Holder of a Claim entitled to vote to accept or reject this Plan.

e. "Business Day" means any day that is not a Saturday, a Sunday or "legal holiday" in the State of Maryland as such term is defined in Bankruptcy Rule 9006(a).

f. "Cash on Hand" means any currency or deposits being held by the Debtor, or hereafter collected by the Debtor. The amount of the Cash on Hand is not possible to be known and may fluctuate due to the payment of claims and post-petition recoveries, though it is reasonably believed the Cash on Hand is $0.00.

g. "Causes of Action" means, any and all claims, choses in action, causes of action suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payments and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively, in law, equity or otherwise, which are owned or held by, or have accrued to, the Debtor, whether arising before or after the Petition Date, including, without limitation, those which are: (i) against any party that has filed a Claim herein; (ii) property of any Estate under and pursuant to Section 541 of the Bankruptcy Code; (iii) for subrogation and contribution; (iv) for turnover; (v) for avoidable transfers and preferences under and pursuant to Sections 542 through 550 and 553 of the Bankruptcy Code and applicable state law; (vi) to determine the extent, validity and priority of liens and encumbrances; (vii) for surcharge under Section 506(c) of the Bankruptcy Code; (viii) for subordination under Section 510 of the Bankruptcy Code; (ix) related to federal or state securities laws; (x) direct or derivative claims or causes of action of any type or kind; (xi) for professional malpractice against professionals employed by any Debtor; (xii) against any and all current and/or former officers and directors of any Debtor; (xiii) under and pursuant to any policies of insurance maintained by any Debtor; (xiv) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xv) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code; (xvi) which arise under or as a result of any section of the Bankruptcy Code, including Section 362; (xvii) or may be available to any Debtor against any third party(ies) under any legal or equitable theory, whether or not specifically identified or

described herein or in the Official Form 425A; and (xviii) to the extent not otherwise set forth above, as described in the Official Form 425A.

  h. "Claim" has the meaning ascribed in Section 101(5) of the Bankruptcy Code.

  i. "Class" means a category of Holders of Claims or Equity Interests as set forth in Article III of the Plan.

  j. "Confirmation" shall mean the entry of an order of the Bankruptcy Court confirming the Plan in accordance with Section 1129 of the Bankruptcy Code

  k. "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

  l. "Confirmation Date Assets" means all Property of the Debtor as of the Confirmation Date (excluding assets previously distributed, abandoned, expended or otherwise disposed of by the Debtor prior to the Confirmation Date and not otherwise subject to recovery), including, without limitation, all Causes of Action and other Property existing as of the Petition Date and acquired by any or all of the Debtor during the pendency of this case under the Bankruptcy Code or otherwise.

  m. "Confirmation Hearing" means the hearing before the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider confirmation of this Plan.

  n. "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code, as such order may be amended, modified or supplemented.

  o. "Creditor" has the meaning ascribed in Section 101(10) of the Bankruptcy Code and shall refer to any Holder of a Claim against any Debtor or Holder of any Claim against Property of Debtor as defined in Section 102(2) of the Bankruptcy Code.

  p. "Disclosure Statement" means the Disclosure Statement with respect to this Plan, as may be amended.

  q. "Distribution" means each distribution of Cash to Holders of Allowed Claims pursuant to and under the terms of this Plan by the Debtor on each Distribution Date.

  r. "Distribution Date" means the date(s) which Distributions shall be made pursuant to and under the terms of this Plan by the Debtor.

  s. "Effective Date" shall mean the date fourteen days after the Confirmation Date.

  t. "Equity Interest" means any ownership interest or share in the Debtor (including, without limitation all rights to obtain such an interest or share in any Debtor).

  u. "Estate" means the estate created in this case for the Debtor pursuant to Section 541 of the Bankruptcy Code.

v. "File, Filed or Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

w. "Final Order" means an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and: (i) as to which the time to appeal or seek reconsideration or rehearing thereof has expired; (ii) in the event of a motion for reconsideration or rehearing is filed, such motion shall have been denied by an order or judgment of the Bankruptcy Court; or (iii) in the event of an appeal is filed and pending, a stay pending appeal has not been entered; provided, however that with respect to an order or judgment of the Bankruptcy Court allowing or disallowing a Claim, such order or judgment shall have become final and non-appealable; and provided further, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

x. "General Unsecured Claim" means a Claim as of the Petition Date that is not an Administrative Claim, a Secured Claim, a Priority Claim or a Priority Tax Claim.

y. "Holder" means a Person holding a Claim or any authorized agent who has completed, executed and delivered a Ballot in accordance with the applicable voting instructions.

z. "Impaired" has the meaning ascribed in Section 1124 of the Bankruptcy Code.

aa. "Insider" has the meaning ascribed in Section 101(31) of the Bankruptcy Code.

bb. "Lien" means any mortgage, lien, pledge, security interest or other charge or encumbrance or security device of any kind affecting any asset or any property of the Debtor contemplated by Section 101(37) of the Bankruptcy Code.

cc. "Person" has the meaning ascribed in Section 101(41) of the Bankruptcy Code.

dd. "Petition Date" means October 17, 2023, the date on which the Debtor commenced this case by filing a petition for relief pursuant to Section 301 of the Bankruptcy Code.

ee. "Plan" means this Chapter 11 plan, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

ff. "Priority Claim" means a Claim to the extent that it is of the kind described in, and entitled to priority under Sections 507(a)(3), (a)(4), (a)(5), (a)(6), (a)(7) or (a)(9) of the Bankruptcy Code, that is not a Priority Tax Claim.

gg. "Priority Scheme" shall mean the priorities for the payment of claims as set forth in 11 U.S.C. § 507.

hh. "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

ii. "Professional" means any professional employed or to be compensated pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

jj. "Property" means all assets and property included within "property of the estate" as set forth in and within the meaning of Section 541 of the Bankruptcy Code.

kk. "Real Estate" means the real property commonly known as 903 Lake Front Drive, Bowie, Maryland 20721, together with all improvements thereupon.

ll. "Reserve Fund" has the definition set forth in Section 4.3 hereof.

mm. "Schedules" means the Debtor's schedules of assets and liabilities and statement of financial affairs filed with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

nn. "Secured Claim" means a Claim that is secured by a Lien on, or security interest in, property of any Debtor, or that has the benefit of rights of setoff under Section 553 of the Bankruptcy Code, but only to the extent of the value of the creditor's interest in the Debtor's interest in such property, which value shall be determined as provided in Section 506 of the Bankruptcy Code.

oo. "Successful Bid" shall mean the offer to acquire the Real Estate as the highest bid at the Auction.

pp. "Successful Bidder" shall mean the party submitting the Successful Bid for the Real Estate at the Auction.

qq. "U.S. Trustee" shall mean the Office of the United States Trustee.

**1.3  Interpretation.** For purposes of the Plan, (a) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference herein to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (c) unless otherwise specified, all references herein to Articles, Sections, Schedules and Exhibits are references to Articles, Sections, Schedules and Exhibits of or to the Plan; (d) the words "herein" and "hereto" refer to the Plan in their entirety rather than to a particular portion of the Plan; (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (f) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**1.4  Computation of Time.** In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006 shall apply.

## ARTICLE II

## PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND STATUTORY FEES

**2.1** **Administrative Expense Claims**. On the Effective Date or at such time as otherwise agreed, the holder of an allowed Administrative Claim against the Debtor shall receive, in full and final satisfaction of such Holder's allowed Claim, cash in an amount equal to the unpaid portion of such allowed Claim. Upon information and belief, the only administrative expense claimant herein is counsel for the Debtor, who is believed to be holding a retainer that should cover most – if not all – of counsel's fees. To the extent said retainer is insufficient to cover such fees, any Administrative Claim will be paid from the Reserve Fund.

To facilitate the orderly payment of Administrative Claims, the Confirmation Order will establish an Administrative Claims Bar Date as described in the Plan. <u>All Administrative Claims must be asserted no later than the Administrative Claims Bar Date in order to be allowed and eligible for payment. Parties who fail to assert Administrative Claims in accordance with the Administrative Bar Date will be forever barred from receiving distributions under the Plan as Administrative Claim holders</u>. Administrative Claims remain subject to approval of the Bankruptcy Court as a condition precedent to payment.

**2.2** **U.S. Trustee's Fees.** The U.S. Trustee shall receive payment, on or before the Effective Date, of all fees owed under 28 U.S.C. § 1930(a)(6) on account of disbursements made by the Debtor from the Petition Date through the Effective Date. Any U.S. Trustee's fees owed subsequent to the Effective Date will be paid on the date on which the case is closed or converted to a case under Chapter 7. The Cash on Hand shall be used to pay these fees. Should Cash on Hand be insufficient to pay these fees, any U.S Trustee fees shall be paid from the Reserve Fund.

**2.3** **Priority Tax Claims**. Unless a Final Order otherwise provides, at the time of a closing of a sale of the Real Estate—whether through the Auction or otherwise—each Holder of a Priority Tax Claim that is an allowed Claim against the Debtor shall receive, in full and final satisfaction of such Holder's allowed Claim cash in an amount equal to the unpaid portion of such allowed Claim. For the avoidance of doubt, the terms of this Plan are constructed to ensure such payment occur not later than a date within five (5) years of the Petition Date. Notwithstanding the foregoing, the Holder of an allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the allowed Priority Tax Claim. It is not believed there exist any Priority Tax Claims in this case.

**2.4** **Full Satisfaction, Discharge and Release**. The payments, distributions and other treatment afforded to Holders of allowed Administrative Claims and allowed Priority Tax Claims against the Debtor under this Article II shall be in full and complete satisfaction, discharge and release of such allowed Claims.

# ARTICLE III

## CLASSIFICATION, IMPAIRMENT AND TREATMENT OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR

**3.1     Generally.**  All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are placed in Classes as set forth below.  A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled or paid prior to the Effective Date, and is classified in other Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes.

**3.2     Identification and Treatment of Classes.**

The following are the designations for, and treatment of, the Classes of Claims against and Equity Interests in the Debtor:

**(a)     Class 1 - Allowed Secured Claim of WCP.** Class 1 consists of the allowed Secured Claim of WCP in an amount owed, as of the Petition Date, of $660,122.04 plus accruing post-petition interest, fees and costs at the contract rate. WCP will be paid all proceeds of the sale of the Real Estate, after payment of (i) any Section 2.3 tax claims that hold a lien on the Real Estate senior to that of WCP; and (ii) the Class 2 Claim of Prince George's County, Maryland. Class 1 shall also receive any Cash on Hand that remains after the retirement of those claims delineated in Article II hereof, up to the sum required to pay the Class 1 Claim in full.

Class 1 is an impaired class.

**(b)     Class 2 – Allowed Secured Claim of Prince George's County, Maryland.** Class 2 consists of the allowed Secured Claim of Prince George's County, Maryland in an amount owed, as of the Petition Date, of $8,205.83.

Class 2 is an impaired class.

**(c)     Class 3 – Allowed Unsecured Claims.** Class 3 shall consist of all Claims that are not Secured Claims. Class 3 does not presently have any constituent Claims as no creditors, aside from Prince George's County, Maryland, have filed a proof of claim herein, and no creditors, aside from WCP, were scheduled by the Debtor. The bar date for the filing of non-governmental Claims has passed. It is accordingly believed that Class 3 is a phantom class. However, to whatever extent one or more creditors may ultimately become a part of Class 3, such Claims will be paid, *pari passu*, from proceeds of the sale of the Real Estate *after* payment of Class 1 and Class 2. It is not clear if any such proceeds will be extant.

Class 3 is an unimpaired class so long as it has no members; should Class 3 gain any membership, Class 3 will be an impaired class.

**(d)     Class 4 – Equity Interest.**

Class 4 shall consist of the Equity Interests of the Debtor. This class shall receive any proceeds of the sale of the Real Estate *after* payment of Class 1, Class 2, and Class 3.

7

Class 4 is an Insider and is an Impaired class.

# ARTICLE IV

# MEANS OF IMPLEMENTING THE PLAN

**4.1** **Sale or Refinancing of Real Estate**.

    **4.1.1** **Sale or Refinancing by Debtor.** The Debtor shall have to and through July 7, 2025 to close upon any sale or refinancing of the Real Estate, in a sum sufficient to satisfy all Class 1 and Class 2 claims herein, as well as all obligations set forth in Article II hereof. The Debtor may achieve such a sale through any lawful means (i.e., listing with an agent, engaging in a private sale, or otherwise). The Debtor may refinance the debt secured by the Real Estate (being that debt delineated in Class 1 and Class 2 hereof), provided such a refinancing furnish monies in a sum sufficient to retire all Class I, Class 2 and Article II obligations, through any lawful means (i.e., with a private lender, through the raising of new capital through a dilution of extant equity, through a sale of equity, or otherwise). At the time of closing of such a sale or refinancing, the Debtor shall cause to be paid—in full—all Class 1, Class 2 and Article II claims herein. The Debtor may not close upon such a sale or refinancing if such will not result in the provision of funds sufficient to satisfy all Class 1, Class 2 and Article II claims, *except* the Debtor—through any lawful means—may cause additional monies to be delivered, at closing, so as to ensure the provision of funds sufficient to satisfy this obligation.

    **4.1.2** **Auction.** Should all Class 1 and Class 2 claims, alongside Article II obligations, not be paid in fully by the close of July 7, 2025, then on July 15, 2025, an auction for the Real Estate (the "Auction") will be conducted on the front steps of 6500 Cherrywood Lane, Greenbelt, Maryland 20770, at 10:00 am prevailing Eastern Time or as soon thereafter as may be practicable. Notice of the Auction shall be given to all holders of Claims, via US Mail, postage prepaid, not later than seven (7) days before the date of said Auction, and such notice shall set forth (i) the date of the Auction; (ii) the time of the Auction; and (iii) the location of the Auction. The minimum bid to acquire the Real Estate at the Auction shall be $400,000.00. The Auction will be conducted by an individual of WCP's election, with it being reasonably anticipated such individual will be counsel for WCP.

As a condition precedent to bidding at the Auction, any person must—at least 24 hours prior to the commencement of the Auction—first post a deposit of $150,000.00 in cash, certified check, or money order, provided, however, WCP shall not be required to post any deposit. WCP shall be permitted to credit bit its Claim, up to the full amount thereof, at the Auction, *provided* that if WCP is the Successful Bidder, and the Successful Bid is solely a credit bid, WCP shall nonetheless be required to pay, in cash, the full amount of the Class 2 Claim. Any deposits shall be presented to counsel of record for WCP and deposited into said counsel's attorney trust account.

    **4.1.3** **Sale of the Property to the Successful Bidder.** Should the Auction occur, at closing following the Auction, which is to be held as soon as practicable following the Auction and in no event more than three Business Days after the conclusion of the Auction, and concurrent with the Successful Bidder presenting cash or certified funds to counsel for WCP (to be held in an

attorney's trust account), the Real Estate shall be transferred to the Successful Bidder pursuant to the Successful Bid free and clear of all (i) liens, mortgages, security interests, conditional sale or other title retention agreements, pledges, claims, judgments, demands, charges, encumbrances, defects, options, rights of first refusal, and restrictions of all kinds and (ii) all debts arising under or out of, in connection with, or in any way relating to, any acts of the Debtor, claims, rights, including rights of setoff or recoupment, defenses, causes of action (whether at law or in equity), obligations, demands, guarantees, interests and matters of any kind or nature whatsoever that arise prior to closing. All Classes of Claims will be paid (to the extent there are funds for payment) at closing in accordance with the treatment provided for in the Plan. If WCP is the Successful Bidder, and the Successful Bid is less than the Claim of WCP, there shall be no requirement that cash or certified funds be presented at closing.

        **4.1.4   Deed.**  The sale provided for in Section 4.1.3 hereof shall be consummated pursuant to Section 363 of the Bankruptcy Code, and the Debtor shall present to the Successful Bidder or the designee of the Successful Bidder an executed trustee's deed for the Real Estate, in a form to be prepared by WCP and to be reasonably agreeable to the Debtor, on the date of transference under Section 4.1.3 hereof. Should the Debtor refuse or decline to execute said deed, the United States Bankruptcy Court for the District of Maryland may, upon the making of an appropriate motion, designate a member of the bar of said court to execute the deed on behalf of the Debtor's estate, with said deed to be endorsed by the court. Entry of the Confirmation Order shall constitute approval of such conveyance pursuant to Section 363 of the Bankruptcy Code.

    **4.2   Cash**.  The Debtor, in coordination with counsel of record for WCP, shall distribute such Cash on Hand as may exist, thirty (30) days following the closing contemplated in either Section 4.1.1 or 4.1.3 hereof. To the extent the Plan provides for a payment and there is not sufficient Cash on Hand to make a required payment, payment of the remaining Cash on Hand will be made *pari passu* in accordance with the Priority Scheme. To the extent there is not sufficient Cash on Hand for a payment required by this Plan to be made, no such payment will be made.

    **4.3   Reserve Fund.**  Should there be an Auction, the Successful Bidder shall, *in addition to the Successful Bid*, be required to make available a reserve fund of $10,000.00 (the "Reserve Fund"), for application to the Claims set forth in Article II hereof. To the extent the whole of the Reserve Fund is not needed to retire the Article II Claims in full, the residue of the Reserve Fund shall revert to the Successful Bidder. The Reserve Fund shall be funded by the Successful Bidder, at closing, and held in the attorney trust account of WCP's counsel until such a time as all Article II claims are paid in full. Notwithstanding the requirement that WCP is relieved of the obligation to post a deposit to bid at the Auction, and notwithstanding the right of WCP to credit bid at the Auction, WCP shall be obligated to furnish monies for the Reserve Fund if WCP is the Successful Bidder at the Auction.

    **4.4   Undisclosed Assets**.  The Debtor has not disclosed the existence of any assets, including any Causes of Action, except for the Real Estate. The Plan Proponent does not affirmatively and conclusively know if other assets are extant. However, should any unscheduled

assets be discovered between the date on which this Plan is proposed and the fifth anniversary of the Effective Date, said assets shall accrue to the benefit of the Successful Bidder.

**4.5** **Relinquishment of Occupancy**. Should no sale or refinancing occur pursuant to the provisions of Section 4.1.1 hereof, the Debtor shall take all steps necessary and reasonable to ensure the Real Estate is vacant of all occupants by 12:01 am prevailing Eastern Time on July 8, 2025. Should any occupant(s) remain in the Real Estate at the time of the conduct of an Auction pursuant to Section 4.1.2 hereof, the Successful Bidder—concurrent with accomplishment of the closing provided for in Section 4.1.3 hereof—shall be deemed to be assigned all Causes of Action arising under Section 542 of the Bankruptcy Code and shall thereafter be free, as assignee of said Causes of Action, to petition the Bankruptcy Court for such orders as may be necessary to effectuate a turnover of the Real Estate free of any and all occupants.

## ARTICLE V

## PROVISIONS GOVERNING DISTRIBUTIONS

**5.1** **Delivery of Distributions**.  Distributions and deliveries to Holders of Allowed Claims shall be made at the addresses set forth on the proofs of claim filed by such Holders (or at the last known addresses of such Holders if no proof of claim is filed).

**5.2** **No Interest Unless Otherwise Provided**.  No interest shall be paid on any Claim unless, and only to the extent permitted, under the terms of the Plan.

**5.3** **Undistributed Property**.  If any Distribution remains unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the Holder entitled thereto ("Unclaimed Property"), such Unclaimed Property shall be forfeited by such Holder and be delivered to the Class 4 interest. Should any Unclaimed Property remain unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) to the Class 4 interest in accordance with the Plan, then, pursuant to Local Rule 3011-2, such Unclaimed Property shall be donated to The University of Miami School of Law Bankruptcy Clinic, to be administered by Patricia Redmond.

## ARTICLE VI

## CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN

**6.1** **Conditions to Effectiveness of Plan.**  The Effective Date of the Plan shall not occur unless and until the following conditions shall have been satisfied or waived by the Plan Proponent: (a) the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Plan Proponent, and such Confirmation Order shall be a Final Order; and (b) the Bankruptcy Court shall have approved the information contained in the Disclosure Statement as adequate pursuant to Section 1125 of the Bankruptcy Code.

**6.2** **Notice of Confirmation of the Plan.**  Notice of entry of the Confirmation Order shall be provided as required by Bankruptcy Rule 3020(c)(2).

# ARTICLE VII

## RETENTION OF JURISDICTION

**7.1  Retention of Jurisdiction.**  Pursuant to Sections 1334 and 157 of Title 28 of the United States Code, the Bankruptcy Court shall retain jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, for the purposes of Sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)  to hear and determine any and all adversary proceedings, applications, or contested matters, including avoidance actions, and any remands from any appeals;

(b)  to hear and to determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan;

(c)  to consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(d)  to enter, enforce and implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement, consummate or enforce the terms and conditions of the Plan and the transactions contemplated hereunder;

(e)  to enter and to implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement or enforce the terms and conditions of the Plan;

(f)  to hear and to determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and

(g)  to enter a final decree closing this Chapter 11 case.

**7.2  Abstention and Other Courts.**  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, this section of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

# ARTICLE VIII

## RELEASE FOR PLAN PROPONENT AND PROFESSIONALS

**8.1  Limitation of Liability in Connection with the Case, the Plan, and Related Documents.**  Pursuant to § 1125(e) of the Bankruptcy Code, the Plan Proponent will neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the Case, including, but not limited to, the formulation, preparation, dissemination,

11

negotiation, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement, pleading or document created or entered into, the pursuit, non-pursuit or settlement of Causes of Action or any other act taken or omitted to be taken in connection with or for the purpose of carrying out the Plan, the Disclosure Statement, the Confirmation Order or related agreement, including solicitation of acceptances of the Plan ("Exculpated Conduct"); provided, however, that no Person shall be relieved of liability for fraud, gross negligence, and intentional misconduct.

All Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against the Plan Proponent, whether directly, derivatively, on account of or respecting any Claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct.

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

**9.1** **Severability.** Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the Plan Proponents may modify the Plan in accordance with the Plan, as applicable, so that such provision shall not be applicable to the Holder of any Claim or Equity Interest.

**9.2** **Binding Effect.** Upon the entry of the Confirmation Order, all provisions of the Plan shall be binding upon, and shall inure to the benefit of, the Debtor, the Holders of Claims and Equity Interests, and such Persons' respective successors and assigns.

**9.3.** **Transfer Tax Exemption.** Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or securities under the Plan, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, deeds of trust, mortgages, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, including the sale of the Real Estate provided for under this Plan, shall not be subject to any stamp tax or other similar tax, including, but not limited to, transfer and recordation tax on the sale of the Real Estate.

**9.4** **Governing Law.** Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the laws of the State of Maryland shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**9.5** **Intentionally Omitted.**

**9.6** **Timing of Distributions.** Any Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

**9.7** **Revocation or Withdrawal of Plan.** The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order. If the Plan is withdrawn or revoked, then the result shall be the same as if the Confirmation Order had not been entered and

the Effective Date had not occurred. If the Plan is revoked or withdrawn prior to the entry of the Confirmation Order, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the such entity or any Person in any further proceedings involving such entity.

**9.8** **Nonmaterial Modifications.** The Plan Proponent may, with the approval of the Bankruptcy Court and without notice to Holders of Claims and Equity Interests, correct any nonmaterial defect, omission, or inconsistency herein in such manner and to such extent as may be necessary or desirable.

**9.9** **Material Modifications.** Modifications of the Plan may be proposed in writing by the Plan Proponents at any time prior to Confirmation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponents shall have complied with Section 1125 of the Bankruptcy Code. The Plan may be modified at any time after Confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under Section 1129 of the Bankruptcy Code, and the circumstances warrant such modification.

**9.10** **Cramdown.** This section shall constitute the Plan Proponent's request, if necessary, pursuant to Section 1129(b)(1) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of Section 1129(a)(8) of the Bankruptcy Code may not be met.

**9.11** **No Recourse.** No Person entitled to receive a payment or Distribution under the Plan will have any recourse against the Estate, the Trustee and his professionals, the Debtor, or the Plan Proponent and its professionals, other than the right to receive Distributions in accordance with the terms of the Plan.

**9.12** **Notices.** Any notice required or permitted to be provided hereunder shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) prepaid overnight delivery service and addressed as follows:

> Maurice B. VerStandig, Esq.
> THE VERSTANDIG LAW FIRM, LLC
> 1452 W. Horizon Ridge Pkwy, #665
> Henderson, NV 89012
> *Attorney for WCP Fund I LLC*

**9.13** **Saturday, Sunday, or Legal Holiday.** If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**9.14** **Successors and Assigns.** The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

**9.15     Entry of a Final Decree**.  The Debtor may file a motion with the Bankruptcy Court to obtain the entry of a final decree upon completion of Plan payments.

Respectfully submitted,

Dated: March 12, 2025                    By: /s/ Maurice B. VerStandig
                                         Maurice B. VerStandig, Esq.
                                         Bar No. MD18071
                                         The VerStandig Law Firm, LLC
                                         1452 W. Horizon Ridge Pkwy, #665
                                         Henderson, Nevada 89012
                                         Phone: (301) 444-4600
                                         Facsimile: (301) 444-4600
                                         mac@mbvesq.com
                                         *Counsel for WCP Fund I LLC*